# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 3:14-cr-00096 |
| | ) | |
| DONSHA LAMPKINS | ) | JUDGE CAMPBELL |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release. (Doc. No. 130) and associated letter (Doc. No. 131). The Government filed a Response. (Doc. No. 133). For the reasons stated herein, Defendant's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On September 8, 2020, this Court held a hearing related to Defendant Donsha Lampkins' alleged violations of his conditions of supervised release. At the hearing Defendant admitted to one violation, infractions related to his required contact with his probation officer, and was found guilty of the second violation. The second violation was related an altercation between Defendant and a family member which ended with Defendant shooting another person in the leg. (*See* Superseding Petition, Doc. No. 122). The Court revoked Defendant's supervised release and sentenced him to a term of 24 months imprisonment with no supervised release to follow. (Doc. No. 129). Defendant's projected release date is April 22, 2022.

The COVID-19 coronavirus pandemic is a national public health emergency.[1] As of December 9, 2021, COVID-19 has killed more than 780,000 Americans and infected over

---

[1] *See Renewal of Determination that a Public Health Emergency Exists* (October 15, 2021), https://www.phe.gov/emergency/news/healthactions/phe/Pages/COVDI-15Oct21.aspx (renewing, effective Oct. 18, 2021, determination that a nationwide public health emergency exists due to the COVID-19 pandemic and has existed since January 27, 2020) (last visited December 9, 2021).

1

49 million.[2] The Centers for Disease Control and Prevention ("CDC") advises that individuals with certain underlying health conditions and older adults are at increased risk for severe illness and death if they contract the virus.[3] The CDC defines "severe illness" as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death.[4] On August 23, 2021, the FDA approved the Pfizer Comirnaty Vaccine for COVID-19.[5] Other vaccines continue to be available under an Emergency Use Authorization. The CDC recommends several measures to prevent spreading the virus, including vaccination, wearing masks, and practicing social distancing.[6]

## II. STANDARD OF REVIEW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under Section 3582(c)(1)(A) to allow prisoners to directly petition courts. Until this amendment, compassionate release motions could only be brought by the Director or the Bureau of Prisons, an option that was infrequently exercised.[7] The compassionate release statute now states in relevant part:

---

[2] *CDC, COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker (last visited December 9, 2021)

[3] *See* CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Dec. 9, 2021).

[4] *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 9, 2021).

[5] Approval Letter from Mary Malarkey, Dir. Office of Compliance and Biologics Quality, and Marion Gruber, Dir. Office of Vaccine Research and Review, to Amit Patel, Pfizer Inc. (Aug. 23, 2021), https://www.fda.gov/media/151710/download

[6] *See* CDC, *How to Protect Yourself & Others*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited Dec. 9, 2021).

[7] The first year after passage of the First Step Act, 145 offenders were granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), a five-fold increase from fiscal year 2018, during which 24 compassionate release motions were granted. *See* United States Sentencing Commission, The First Step Act of 2018: One Year of Implementation, 46-49 (Aug. 31, 2020). Of the motions granted during the first year, 96 were filed by the offender. *Id*.

2

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The requirement that a prisoner exhaust administrative rights to appeal or wait 30 days after the first request to the prison is a mandatory claims processing rule. *U.S. v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The Sixth Circuit has considered the exhaustion requirement in the context of the unique circumstances presented by the COVID-19 pandemic and concluded that it "operates as an 'unyielding procedural requirement[]'" and is not subject to equitable exceptions. *Id*. at 834. If a prisoner files an untimely motion for compassionate release, the Court should dismiss the motion without prejudice. *Id*.

The Sixth Circuit has instructed that the statute imposes a three-step test. *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020). "At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*. Step two requires the court to "'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*. Then in step three, the court must consider "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized

3

by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

In *Jones*, the Sixth Circuit addressed the applicability of the Sentencing Commission policy statement to a motion for compassionate release filed directly with the court by imprisoned persons. *See id*. at *7-9. The Sixth Circuit noted that, since the First Step Act was enacted in 2018, the Sentencing Commission has not amended the policy statement pertaining to reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and the existing policy statement applies only to motions filed by the BOP. *Id*. Finding the existing policy statement "inapplicable" to cases filed by an imprisoned person, *Jones* instructs that in considering a motion for compassionate release filed by an incarcerated person, a court may "skip" step two of the inquiry and has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id*. at *9.

### III. ANALYSIS

Defendant moves the Court for compassionate release due to his concerns that he is at a greater risk for severe illness if he contracts COVID-19 due to his compromised immunity and his mental health conditions. The Government argues that Defendant's motion should be denied because he has not demonstrated extraordinary and compelling reasons and that the Section 3553(a) factors, particularly the need to promote respect for the law, weigh against his release.

As an initial matter, the Court will find that Defendant has exhausted his administrative remedies. Defendant states that he submitted his request to the warden and has not received a response. (Doc. No. 131). The Government concedes that this requirement is satisfied. (Doc. No. 133 at 11).

4

Defendant cites his fears about contracting COVID-19, stating that his mental health diagnoses and compromised immune system make him vulnerable. The Government states that Defendant has not presented any CDC risk factors which would justify a finding of extraordinary and compelling reasons in this case. In support of this argument, the Government submitted Defendant's medical records. These records reflect Defendant's mental health diagnoses but do not reflect an auto-immune disorder or an immune-compromised state.

Absent a finding of physical health concern, the Court turns to Defendant's assertions regarding his mental health. The CDC states that certain health conditions, including schizophrenia, may put someone at increased risk for severe illness from COVID-19.[8] However, both the COVID-19 pandemic and Defendant's mental health diagnoses were known to the Court and considered at the time Defendant was sentenced. The Court gave weight to those concerns in crafting the sentence. Additionally, Defendant's mental health conditions appear to be well-managed in prison. Under these circumstances, the Court cannot find extraordinary and compelling reasons exist for Defendant's release. Accordingly, Defendant's Motion for Compassionate Release (Doc. No. 130) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[8] *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 9, 2021).